The Honorable Michael Lamoureux State Representative 312 West Main Street Russellville, AR 72801-3727
Dear Representative Lamoureux:
I am writing in response to your request for my opinion on a number of questions concerning local police and fire pension and relief funds. Before setting out the questions that will be addressed in this opinion, I must note that I am unable to address several of your questions because of pending litigation. This circumstance is addressed more fully below.
The questions that I am able to address are as follows:
 1. Are the records, documents and minutes of a local police or fire pension and relief fund board, as set up under A.C.A. §§ 24-11-401 et seq. and A.C.A. §§ 24-11-801 et seq., subject to FOIA [Freedom of Information Act]? If no, which records, documents or minutes are not subject to FOIA?
 2. Who is authorized under A.C.A. § 24-11-401 et seq. and § 24-11-801 et seq. to determine whether a local police or fire pension and relief fund is actuarially sound?
 3. Can a city council exercise any control over the local police or fire pension and relief fund, as set up under A.C.A. § 24-11-401 et seq. and § 24-11-801 et seq., or countermand any financial directives by the board?
 4. If a police or fire pension and relief fund under A.C.A. § 24-11-401 et seq. and § 24-11-801 et seq. is not actuarially sound, can a city refuse to levy up to a full one mill to make the difference or may a city elect to have the boards prorate benefits as stated in A.C.A. § 24-11-416?
 5. Under A.C.A. § 24-11-435, if a police or fire pension and relief fund covers only retired members and no longer accepts new members, who determines whether the fund has four hundred percent (400%) of its retired life liabilities covered by assets?
RESPONSE
It is my opinion, as discussed more fully below, that the answer to Question 1 will depend upon the applicability of any specific exemptions from the FOIA's disclosure requirements. Regarding the second question, these subchapters establish no authority concerning this determination. Reference must be made instead to A.C.A. §§ 24-11-201 to -207, and the actuarial valuations required under those Code sections. The answer to Question 3 is generally "no" in my opinion. I am unable to respond to the first part of Question 4. As to the second part of this question, it is my opinion that prorating benefits is an option if the fund is insufficient to pay the full amount of benefits due in the current fiscal year. It is my opinion in response to Question 5 that ultimately the local board of trustees makes this determination.
With regard to those questions that are not addressed in this opinion,[1]
I note that although they were posed generally, without reference to a particular local police or fire pension and relief fund, it is my understanding that this involves the police and fire pension and relief funds of the City of Russellville (hereinafter "local funds"). Accordingly, I must also note that an appeal is currently pending before the Arkansas Supreme Court in a case involving a City of Russellville tax millage for the local funds.[2] See Russellville Police Pension andRetirement Board v. Johnson, No. 05-631 (Ark.Sup.Ct., filed June 9, 2005). These circumstances limit my ability to respond to your questions as they pertain to a "millage," which I must interpret to implicate the millage that is the subject of the pending appeal. It is the longstanding policy of this office that opinions not be rendered on matters that are currently in litigation. The Pope County Circuit Court ruled that the City of Russellville resolution levying the millage is "void and of no effect" and ordered that the millage for the police pension and relief fund not be extended or collected. Russellville Police Pension andRetirement Board v. Johnson, et al., supra at n. 1 (Judgment and Order).[3] I am uncertain as to the precise effect of this ruling, except as it pertains to my ability to address the issues you have raised involving a millage. The issue of the levy of the millage for these local funds has been raised in judicial proceedings and is properly addressed in that forum, pursuant to the Court's power and duty to interpret the law as enacted by the General Assembly. Consequently, your questions regarding the levy of a millage to support a local police or fire pension fund are not addressed in this opinion.
Question 1 — Are all records, documents and minutes of a local police orfire pension and relief fund board, as set up under A.C.A. §§ 24-11-401 etseq. and A.C.A. §§ 24-11-801 et seq., subject to the FOIA? If no, whichrecords, documents or minutes are not subject to FOIA?
The requirements of the Arkansas Freedom of Information Act (FOIA) (A.C.A. § 25-19-101 et seq.) clearly apply to the boards of local pension funds created by state law and supported by tax proceeds (A.C.A. §§24-11-401 et seq. and -801 et seq). Accord Op. Att'y Gen. 98-033. Consequently, the records, documents and minutes of such boards are presumed to be "public records" that are open to inspection and copying, "[e]xcept as otherwise specifically provided" either by the FOIA or another law. A.C.A. § 25-19-105(a)(1) (Supp. 2003).
In response to your particular question, I cannot categorically state that all records, documents and minutes of local pension and relief boards are open to public inspection; nor can I pronounce which records are exempt because this can only be determined with reference to particular record(s).[4] Among other possibly applicable exemptions, I note that records concerning an individual's contributions to his or her pension system, as well as the amount of benefits an individual receives, generally constitute "personnel records" under the FOIA. See, e.g., Op. Att'y Gen. 97-331. The FOIA provides an exemption for personnel records, but only to the extent that their disclosure would constitute a "clearly unwarranted invasion of personal privacy." A.C.A. § 25-19-105(b)(12) (Supp. 2003). In applying the "clearly unwarranted invasion" test, it is appropriate to balance the individual's interest in keeping the information private against the public's interest in the information.Young v. Rice, 308 Ark. 593, 826 S.W.2d 252 (1992).
I agree with the position taken by my predecessors in this regard that when applying this balancing test to personal financial information concerning items such as retirement benefits, the balance most often tips in favor of the individual's privacy interest in this information, and it should therefore be kept private. See, e.g., Op. Att'y Gen. Nos. 2002-043
and opinions cited therein. In only one Attorney General opinion has the balance been found to tip in favor of the public's interest in such financial records. See Op. Att'y Gen. 97-331 (mayor's contributions to pension fund should be released to the public). This result is unusual, and absent factors indicating a heightened public interest in such personal financial information, these records should in my opinion be withheld from disclosure.
A necessary corollary attends this observation concerning employee benefit information. Records, documents or minutes containing general benefit information applicable to all employees would, in my opinion, constitute public records that are not subject to any exemption from disclosure. Such records are to be distinguished from those containing specific information about an individual employee's pension benefits.Accord Opinion No. 2002-043.
Question 2 — Who is authorized under A.C.A. § 24-11-401 et seq. and §24-11-801 et seq. to determine whether a local police or fire pension andrelief fund is actuarially sound?
The Code sections you have cited do not address the matter of determining the actuarial soundness of a local pension and relief fund. Reference must be made, instead, to A.C.A. § 24-11-201 — 207 (Repl. 2002 and Supp. 2003), which establish the Arkansas Fire and Police Pension Review Board ("Board"), and which require the biennial actuarial valuation of each municipal police and fire pension and relief fund.[5] In accordance with Section 24-11-205(a)(1) (Repl. 2002), the Board's Executive Director "shall cause an actuarial valuation of each plan to be made biennially to determine how well the plan is meeting the objectives set forth in §24-11-204." This latter Code section provides:
 (a) The general financial objective of each plan shall be to establish and receive contributions, expressed as percentages of active employee payroll or, in the case of volunteer fire department pension plans, expressed in dollar amounts, which will remain approximately level from year to year and which will not have to be increased for future generations of citizens.
 (b) More specifically, contributions received each year shall be sufficient both:
 (A) To fully cover the costs of benefit commitments being made to employees for their service being rendered in each year; and
 (B) To make a level payment which, if paid annually over a reasonable period of future years, will fully cover the unfunded costs of benefit commitments for service previously rendered.
A.C.A. § 24-11-204 (Repl. 2002).
The Board reviews the actuarial valuations (A.C.A. § 24-11-203(a) (Supp. 2003)); and it may require valuations in addition to those that must be prepared biennially. A.C.A. § 24-11-205(a)(3) (Repl. 2002) (stating that "[v]aluations shall be prepared at least for each odd-numbered year ending December 31, or as required by the board for all or certainplans." (Emphasis added). The Board is also given the general power to "make all rules and regulations necessary to enforce the laws governing funding standards and benefit levels for fire and police pension and relief funds." A.C.A. § 24-11-203(j)(1).
With regard to your specific question, therefore, A.C.A. § 24-11-401 etseq. and A.C.A. § 24-11-801 et seq. do not establish any authority, requirements or procedures for determining the actuarial status of a local pension plan. This matter is governed instead by A.C.A. §§24-11-201—207.
Question 3 — Can a city council exercise any control over the local police or fire pension and relief fund, as set up under A.C.A. § 24-11-401
et seq. and § 24-11-801 et seq., or countermand any financial directives by the board?
It seems clear from a review of both bodies of law that the boards of trustees of the respective funds have been vested with the general power and duty to administer the funds. See A.C.A. §§ 24-11-405(c) (vesting board of local police pension fund with "absolute control and management of the funds") and -803 (establishing powers of local fire pension board). See also! A.C.A. §§ 24-11-405(d) and -803(a)(3) (regarding the boards' power to make all necessary rules and regulations).
Thus, while it is difficult to answer this question definitively without knowing precisely what is meant by "control," and what "financial directives" may be at issue,[6] it is my opinion that the answer is, generally, "no" on both counts.
Question 4 — If a police or fire pension and relief fund under A.C.A. §24-11-401 et seq. and § 24-11-801 et seq. is not actuarially sound, can a city refuse to levy up to a full one mill to make the difference or may a city elect to have the boards prorate benefits as stated in A.C.A. §24-11-416?
As stated above, the current circumstances prevent me from addressing your questions as they relate to a millage for the support of a local pension and relief fund. I will nevertheless note that I believe the first part of this question has a faulty premise. You appear to assume that the levy of a full millage will "make the difference" in the case of a local pension and relief fund that is not actuarially sound. However, the state law that makes provision for financial assistance to underfunded plans generally assumes, and indeed requires, that the local fund receives a full one mill. See A.C.A. § 24-11-209 (Repl. 2002) (regarding the Arkansas Fire and Police Guaranty Fund ("the Fund")). As one of the conditions for receiving any assistance from the Fund, a "projected insolvent fund" "must be receiving a dedicated millage of one (1) mill." A.C.A. § 24-11-209(b)(2)(B)(iii).[7] A "projected insolvent fund" is one that is projected to deplete its assets within ten years after the date of the biennial actuarial valuation that was made pursuant to A.C.A. § 24-11-205, discussed above. A.C.A. § 24-11-208(b) (Repl. 2002).
I must therefore presume that an actuarially unsound fund will be in peril notwithstanding the full one mill levy. Regarding the options that may be available to such a fund, I note that the Arkansas Fire and Police Pension Review Board "shall notify the board of trustees of each projected insolvent fund of its funded status and the options available to the fund to protect the benefits of its members, retirants, and beneficiaries." Id. at subsection (c).
With regard to the second part of this question concerning prorating benefits, it must first be noted that A.C.A. § 24-11-416 (Repl. 2002) applies only to a police pension fund. The proration provision for a fire pension fund is A.C.A. § 24-11-807 (Supp. 2003).
In addressing this question, I note that the proration option applies at a time when the fund is insufficient to pay full benefits to each eligible beneficiary.[8] Section 24-11-416 states:
 If at any time there should not be sufficient money in the fund to pay each person a full amount to which he or she may be entitled, the beneficiaries shall be paid by prorating the fund available among them.
Section 24-11-807(b) (Supp. 2003) states:
 Should the fund provided for in this subchapter be insufficient to make full payment of the amount of pensions to all persons entitled thereto, then the fund shall be prorated among those entitled by the proper authorities as may be deemed just and equitable.
In my opinion, these provisions contemplate the fund's current inability to pay full benefits to eligible beneficiaries. I believe this is reflected in Section 24-11-416 wherein it authorizes proration "[i]f at any time" there is insufficient money in the fund to make full payment. Section 24-11-807 is more explicit in this regard, stating that the proration will be considered equitable if:
 (1) The board of trustees pays the full minimum benefit each month to all eligible beneficiaries until assets in the fund are depleted for the fiscal year, at which time all payments shall cease until revenues are received for the next fiscal year; or
 (2) The board of trustees decreases all payments to all eligible beneficiaries by an equal proportion for the fiscal year and does not allow the assets in the fund to become fully depleted.
A.C.A. § 24-11-807(d) (Supp. 2003).
I do not believe it can be assumed that an actuarially unsound fund will be unable to pay full benefits to its currently eligible recipients. Although there is no definition of such a fund, helpful insight can be gained from the provisions governing the Arkansas Fire and Police Guaranty Fund (A.C.A. §§ 24-11-208 and -209, supra). As indicated above, this state fund was established to provide financial assistance to certain underfunded municipal fire and police pension funds. In recommending financial assistance, the Arkansas Fire and Police Pension Review Board must follow certain priorities, which are identified in relevant part as follows:
 (A) Projected insolvent funds which are not expected to have enough funds to provide benefits for the current year;
 (B) Projected insolvent funds which are expected to deplete their funds within the next three (3) years;
 (C) Projected insolvent funds which are expected to deplete their funds within the next ten (10) years;
 (D) Funds that are determined to be actuarially unsound by the Arkansas Fire and Police Pension Review Board. . . .
A.C.A. § 24-11-209(e)(3) (emphasis added).
This provision reflects a clear distinction between an "actuarially unsound" fund and a fund that cannot pay benefits for the current year. I believe it may reasonably be concluded in light of this distinction that the answer to your question is "no," unless the assets of the fund are insufficient to pay full benefits in the current fiscal year.
Question 5 — Under A.C.A. § 24-11-435, if a police or fire pension andrelief fund covers only retired members and no longer accepts newmembers, who determines whether the fund has four hundred percent (400%)of its retired life liabilities covered by assets?[9]
It is my opinion that ultimately the local board of trustees makes this determination in the exercise of its "absolute control and management of the funds. . . ." A.C.A. § 24-11-405(c). It should perhaps also be noted in this regard, however, that the statute is silent with respect to the source of information for making this determination. Considering the local board's presumed lack of expertise in making the necessary projections, and the absence of any provision in A.C.A. § 24-11-401 etseq. for actuarial valuations (see response to Question 2 above), it is reasonable in my view to assume that the legislature intends for the local board of trustees to rely upon the plan's actuarial valuation made pursuant to A.C.A. § 24-11-205, supra.
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB: EAW/cyh
[1] The questions are as follows:
 • If a local police or fire pension and relief fund, as set up under A.C.A. §§ 24-11-401 et seq. and A.C.A. §§ 24-11-801 et seq., is closed to new members and all the members of the fund are retired, is a city which had previously approved a millage to fund the matching contributions of these funds still obligated to levy the millage to cover unfunded liability of the fund?
 • If a local police or fire pension and relief fund, as set up under A.C.A. §§ 24-11-401 et seq. and A.C.A. §§ 24-11-801 et seq., is closed to new members and all the members of the fund are retired, is a city which had previously approved a millage to fund the matching contributions of those members when actively contributing still obligated to levy a millage to contribute to the fund to cover any incidental expenses or cost of living expenses if the fund is actuarially sound?
 • If a local police or fire pension and relief fund, as set up under A.C.A. §§ 24-11-401 et seq. and A.C.A. §§ 24-11-801 et seq., is closed to new members and all the members of the fund are retired, is a city which had previously approved a millage to fund the matching contributions of those members when actively contributing still obligated to contribute the usual millage levy to the fund if the city does not levy a millage for the fund?
 • Does a city, which approved a millage levy up to one mill to support a police or fire pension and relief fund, must [sic] continue to levy millage for the fund if the fund is actuarially sound?
 • What steps would be required to permanently abolish a millage passed pursuant to A.C.A. §§ 24-11-401 et seq. and A.C.A. §§ 24-11-801 et seq.?
[2] The notice of appeal was filed on February 22, 2005. SeeRussellville Police Pension and Retirement Board v. Johnson et al.,
CV-2005-55 (Pope Co. Cir. Ct. Civ. Div. 5(a)).
[3] The court also held that its rulings rendered moot "all issues raised regarding the Russellville Fire Pension and Retirement Board. . . ." Id. I am uncertain of the holding's effect on the fire pension and relief fund millage. But in light of the pending appeal, I am unable in any event to address your questions as they may pertain to that millage.
[4] For instance, in the case of a disabled police officer who is retired under a local fund, the record of such member's retirement must, pursuant to A.C.A. § 24-11-407(c) (Repl. 2002), include the findings of the examining physician. It is reasonable to surmise that this may include medical records that would be exempt from public inspection and copying under A.C.A. § 25-19-105(b)(2).
[5] See also A.C.A. §§ 24-11-101—103 (Repl. 2002) (regarding the requirement of an actuarial evaluation as a condition of any proposed benefit increase).
[6] See, e.g., A.C.A. § 24-11-105 (Supp. 2003) (requiring city council's approval before survival benefits may be paid to spouses who remarry after they begin receiving benefits under the municipal pension and relief fund).
[7] An exception applies in the case of a municipal police or fire pension fund administered by the Arkansas Local Police and Fire Retirement System ("LOPFI"). See A.C.A. § 24-11-209(e)(3)(E) (Repl. 2002); A.C.A. §§24-11-406 (police) and -804 (fire) (Repl. 2003) (assigning to LOPFI administrative responsibility for certain small funds, i.e., those covering fewer that four active members, that have been designated "inactive" by the employer).
[8] No prorating of benefits is allowed in an "inactive fund" administered by LOPFI. A.C.A. §§ 24-11-406(b)(4)(C) and — (b)(3)(D); n. 7, supra.
[9] This Code section authorizes a police pension fund to buy out its beneficiaries if the fund "covers only retired members, no longer accepts new members, and has over four hundred percent (400%) of its retired life liabilities covered by assets. . . ." A.C.A. § 24-11-435(a)(1) (Repl. 2002).